IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:11-CV-113-RLV-DCK

| | |
|---|---|
| TIMOTHY WAYNE HEDRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 15) and "Defendant's Motion For Summary Judgment" (Document No. 16). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Timothy Wayne Hedrick ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On September 10, 2008, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning May 20, 2008. (Transcript of

the Record of Proceedings ("Tr.") 11). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 13, 2009, and again after reconsideration on June 11, 2009. (Tr. 11). Plaintiff filed a timely written request for a hearing on July 20, 2009. (Tr. 7, 11).

On July 7, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Daniel J. Stein ("ALJ"). (Tr. 11-19). In addition, Mark L. Killian, claimant's attorney, appeared at the hearing. (Tr. 11). On August 17, 2010, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 11-19). Plaintiff filed a request for review of the ALJ's decision on October 1, 2010, which was denied by the Appeals Council on June 16, 2011. (Tr. 1-3). The August 17, 2010 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 19, 2011. (Document No. 1). On August 19, 2011, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 15) and "Memorandum In Support Of Motion For Summary Judgment" (Document No. 15-1), were filed February 21, 2012; and Defendant's "Motion For Summary Judgment" (Document No. 16) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 17), were filed April 13, 2012. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards.

2

Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 20, 2008, and the date of his

3

decision.[1] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from May 20, 2008, through the date of his decision, August 17, 2010. (Tr. 11).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 18).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since May 20, 2008, his alleged disability onset date. (Tr. 13). At the second step, the ALJ found that Plaintiff's morbid obesity; obstructive sleep apnea; history of syncope of unknown etiology; and coronary artery disease, were severe impairments. (Tr. 13).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 14).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work, with the following limitations:

> no climbing of scaffolding/ropes/ladders, occasional balancing and climbing of ramps/stairs, and frequent stooping, kneeling, crouching, and crawling. He should avoid concentrated exposure to workplace hazards such as dangerous machinery and heights.

(Tr. 15). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16)

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a frame builder, carving machine operator, and assistant supervisor. (Tr. 17). At the fifth and final step, the ALJ concluded that Plaintiff can adjust to other work, and jobs exist in significant numbers in the national economy that the claimant can perform. (Tr. 18). The Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines support a finding that the plaintiff was "not disabled." 20 CFR Part 404, Subpart P, Appendix 2; (Tr. 18). The ALJ further found that the aforementioned limitations on Plaintiff's ability to perform light work would have little or no effect on the occupational base of unskilled light work. SSR 85-15. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 20, 2008, and the date of his decision, August 17, 2008. (Tr. 18-19).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to properly weigh the opinion of a consultative examining physician; (2) the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence; (3) the ALJ failed to meet his burden of providing evidence that Plaintiff can perform other jobs that exist in substantial numbers in the national economy; and (4) the ALJ erred in evaluating Plaintiff's subjective complaints and made a conclusory credibility determination in violation of SSR 96-7p. (Document No. 15-1). The undersigned will discuss each of these contentions in turn.

**A. Weight Afforded to Dr. Girmay's Opinion**

In making the determination that Plaintiff is capable of light work with some postural and environmental limitations, the ALJ claims to have considered "opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 . . . and SSR 96-6p." (Tr. 15). Federal Regulations

require an ALJ to consider findings of state agency physicians as opinion evidence. 20 C.F.R. § 404.1527(f)(2); (Document No. 15-1 at 6). Social Security Ruling 96-6p provides that findings regarding the nature and severity of an impairment made by state agency physicians "must be treated as expert opinion evidence and may not be ignored." SSR 96-6p (S.S.A.), 1996 WL 374180; 20 C.F.R. 404.1527(f)(2)(ii); (Document No. 15-1 at 6-7).

In his first assignment of error, Plaintiff argues that Defendant violated 20 C.F.R. § 404.1527 and SSR 96-6p by failing to discuss, explain, or weigh Dr. Girmay's ("Girmay") findings that plaintiff suffers from obstructive sleep apnea, diabetes mellitus, shortness of breath, and morbid obesity. (Document 15-1 at 2, 6, 7; Tr. 376). Plaintiff further argues that the ALJ did not provide specific reasons for rejecting the evidence from Girmay, and "the failure to explain in his decision the weight given to this expert medical evidence is reversible error." (Document No. 15-1 at 7).

Defendant argues, to the contrary, that the findings from Girmay's consultative examination of morbid obesity, sleep apnea, shortness of breath, and diabetes were incorporated in the ALJ's decision. (Document No. 17 at 4; Tr. 13, 14). Defendant further argues that "the ALJ explicitly incorporated Girmay's findings, by referencing the number of his report." (Document No. 17 at 4-5). The decision cited exhibit 12F several times, which is the consultative examination report by Girmay from May 16, 2009. (Tr. 14, 16.). Defendant's final argument is that state agency consultant Dr. Gardner ("Gardner"), who reviewed the record and crafted an RFC assessment to which the ALJ assigned great weight, explicitly incorporated Girmay's findings. (Document No. 17 at 5-6; Tr. 17, 376-77, 378).

The Court finds that the ALJ reviewed and discussed all of the diagnoses made by Girmay as required under 20 C.F.R. § 404.1527 and SSR 96-6p. The undersigned agrees with Defendant's

position that the ALJ incorporated the findings from Girmay's consultative examination into the decision and cited Girmay's consultative examination report several times throughout the decision. The findings of Girmay were also accounted for and incorporated in Gardner's opinion, which was heavily relied upon by the ALJ. (Tr. 17). Gardner made a Physical Residual Functional Capacity Assessment on June 9, 2009. In his assessment, he considered <u>all evidence</u> on file. (Tr. 351, 381). Since Gardner's examination of Plaintiff took place after Girmay's examination, Gardner incorporated Girmay's findings into his decision. (Tr. 376-77, 388). The ALJ explicitly relied on Gardner's opinion to find that Plaintiff is capable of light work with some postural and environmental limitations, and stated: "[b]etween the two state agency medical opinions, the undersigned gives the greatest weight to the opinion of state agency consultant Dr. Robert Gardner (Tr. 17, 381-88). Accordingly, the undersigned finds that the ALJ properly evaluated Girmay's findings and opinion in accordance with 20 C.F.R. § 404.1527 and SSR 96-6p.

**B. Substantial Evidence Supporting the ALJ's Determination of Plaintiff's Residual Functional Capacity**

As noted above, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work with the limitations of no climbing of scaffolding/ropes/ladders, occasional balancing and climbing of ramps/stairs, and frequent stooping, kneeling, crouching, and crawling. (Tr. 15). The ALJ determined Plaintiff should also avoid concentrated exposure to workplace hazards such as dangerous machinery and heights. <u>Id.</u> To reach this conclusion, the ALJ claims to have "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." <u>Id.</u>

In his second assignment of error, Plaintiff argues that the ALJ's determination of his RFC was not based on substantial evidence because the ALJ's "findings in this case did not include a discussion on how the Plaintiff's episodes of excessive daytime sleepiness were consistent, or inconsistent, with the objective medical evidence" and the ALJ failed to address the effects that Plaintiff's complaints of daytime somnolence and fatigue had on Plaintiff's RFC. (Document No. 15-1, at 9, 11-12). Further, Plaintiff claims that the ALJ did not properly assess Dr. Wilson's treatment notes, which described Plaintiff's obstructive sleep apnea, symptoms of excessive daytime sleepiness, reports of falling asleep at the wheel, episodes of severe coughing, and failed attempt at CPAP treatment. (Document No. 15-1 at 8-12; Tr. 251, 325, 327-28).

In response, Defendant first argues that "the ALJ accounted for Plaintiff's sleep apnea, finding it a severe impairment," (Document No. 17 at 8; Tr. 13), and that "the ALJ addressed Plaintiff's complaints of limitations resulting from sleep apnea by relying on the RFC assessment from a state agency physician who incorporated these complaints." (Document No. 17 at 8; Tr. 13, 17). Defendant then argues that the ALJ assessed Plaintiff's subjective complaints under the two-step credibility analysis established by Craig v. Chater, and accurately determined that Plaintiff is not credible to the extent that his complaints are inconsistent with his ability to perform light work. 76 F.3d 585, 594-595 (4th Cir. 1996); (Tr. 17). Finally, Defendant argues that the ALJ "recounted Dr. Wilson's treatment notes" in his decision. (Document No. 17 at 7; Tr. 13, 14, 17).

To support his RFC determination that Plaintiff is capable of light work, the ALJ gave significant weight to Gardner's Physical Residual Functional Capacity Assessment. (Tr. 17, 381-88). In Gardner's assessment, which was based on "all evidence in the file," Gardner found that Plaintiff is capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing or

9

walking for a total of about six hours in an eight-hour workday, and sitting for a total of about six hours in an eight-hour workday. (Tr. 382). This is in accordance with the Code of Federal Regulations' definition of light work, which states that "light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567. Gardner included Plaintiff's allegations of extreme fatigue and inability to stay awake in his assessment. (Tr. 388). In addition, the ALJ took Plaintiff's medical conditions into account, identifying Plaintiff's morbid obesity, obstructive sleep apnea, history of syncope, and coronary artery disease as severe impairments. (Tr. 13).

The undersigned agrees that Plaintiff's medically determinable impairments are consistent with the ALJ's RFC determination, and the ALJ correctly concluded that Plaintiff's subjective complaints are not credible to the extent that they are inconsistent with his RFC. (Tr. 17). To evaluate Plaintiff's credibility, the ALJ applied the Fourth Circuit's Craig test, which is a two-step credibility analysis in which the ALJ considers (1) "objective medical evidence showing the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged[,]" and (2) "the intensity and persistence of the claimant's pain, and the extent to which it affects [the claimant's] ability to work." Id. At the second step of the credibility analysis, both subjective and objective factors should be considered. Craig, 76 F.3d at 595.

At step one of the Craig test, there is extensive medical evidence unequivocally stating that Plaintiff suffers from obesity, obstructive sleep apnea, episodes of syncope, and diabetes, thus "showing the existence of medical impairment(s) . . . which could reasonably be expected to produce

the pain or other symptoms alleged" and meeting step one of the Craig test. Craig, 76 F.3d at 595; (Tr. 13-14). At step two, concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that Plaintiff's statements of extreme fatigue and inability to stay awake fail the Craig test and are not credible. (Tr. 16-17). The determination that the Plaintiff's allegations are not credible is based on the ALJ's observation that Plaintiff has a poor reputation for following up with treatment for his sleep apnea. (Tr. 17). Specifically, it was noted that Plaintiff had trouble tolerating CPAP treatment, (Tr. 251), but against several medical recommendations, did not schedule appointments for further CPAP/BIPAP treatment. (Tr. 17). Plaintiff's history of noncompliance with treatment casts doubt on his credibility, and the ALJ based his misgivings about Plaintiff's allegations of extreme fatigue and an inability to stay awake upon this evidence. (Tr. 16-17). Therefore, the court finds that substantial evidence supports the ALJ's determination in that Plaintiff's allegations are not credible to the extent that they are inconsistent with the ALJ's RFC assessment. (Tr. 16).

Finally, in response to Plaintiff's argument that the ALJ did not properly assess Dr. Wilson's treatment notes, the Court finds that the ALJ's decision discussed Plaintiff's May 2008 reports of "excessive daytime sleepiness and severe coughing paroxysm to the point of passing out," March 2010 reports that Plaintiff was not using his BIPAP machine due to complications with the mask, and Plaintiff's high blood sugar readings, which were all derived from Dr. Wilson's notes. (Tr. 13, 14, 17, 325). Plaintiff fails to highlight anything the ALJ overlooked in the record. Therefore, the undersigned agrees that substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity.

### C. Evidence of the Existence Of Other Jobs Plaintiff Could Perform

The ALJ found in step four of the SSA's five-step sequential evaluation process that Plaintiff could not return to his past relevant work as a frame builder, carving machine operator, and assistant supervisor due to his impairments. (Tr. 17). In step five, the ALJ determined that Plaintiff can adjust to other work, and jobs exist in the national economy that Plaintiff can perform. To support this finding, the ALJ used the Medical-Vocational Guidelines, in conjunction with the Plaintiff's RFC, age, education, and work experience, to direct a conclusion that Plaintiff is not disabled. (Tr. 18). The ALJ further found that Plaintiff's additional limitations on his RFC have "little or no effect on the occupational base of unskilled light work." (Tr. 18).

In his third assignment of error, Plaintiff argues that the ALJ failed to meet his burden of providing evidence that Plaintiff can perform other jobs that exist in substantial numbers in the national economy, considering his severe sleep apnea and fatigue. (Document No. 15-1 at 13). Plaintiff bases his argument on Smith Ex Rel. Smith v. Astrue, 2008 WL 2225846 (W.D. Va. May 27, 2008). In Smith, the claimant suffered from severe obstructive sleep apnea and fatigue. Id at 1. The vocational expert gave equivocal testimony merely stating that Smith may or may not be able to perform certain jobs, depending on how sleepy and fatigued he gets. Id at 6. Upon review of the ALJ's decision, the Smith court found that by relying on equivocal testimony to deny social security benefits to the claimant, the Commissioner failed to meet his burden at step five of the disability evaluation process. Id. The court reversed the decision of the Commissioner, and remanded the case for calculation of benefits. Id at 8.

Defendant argues that the ALJ correctly relied on the Medical-Vocational Guidelines to determine that Plaintiff was not disabled and vocational expert testimony was not needed. (Document No. 17 at 9). Specifically, Defendant states that "where a claimant's RFC is consistent

with a capacity for unskilled work at a given exertional base, the ALJ may rely on the [Medical-Vocational Guidelines] at step five of the sequential evaluation process to direct a conclusion that a claimant is or is not disabled" and "the regulations permit the Commissioner to take administrative notice of the significant number of unskilled, light and medium jobs that exist in the national economy." (Document No. 17 at 9). Defendant additionally argues that Smith is distinguishable from this case. (Document No. 17 at 10).

The undersigned agrees that Plaintiff's case is distinguishable from Smith because here the ALJ relied on the Medical-Vocational Guidelines instead of equivocal testimony by a vocational expert. An ALJ may use the Medical-Vocational Guidelines to determine whether or not an individual is disabled when an individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, including age, education, and work experience. 20 C.F.R. § 404, Subpart P, Appendix 2, § 200. Further, the Commissioner is permitted to take administrative notice of the significant number of unskilled sedentary, light, and medium jobs that exist in the national economy when determining whether a claimant is disabled at step five of the disability assessment, 20 C.F.R. §§ 404.1566(d), 416.966(d), and the Medical-Vocational Guidelines reflect the existence of these jobs. 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.

The undersigned also agrees with Defendant's position that the ALJ properly determined Plaintiff can perform work existing in significant numbers in the national economy, and that this determination is supported by substantial evidence. The ALJ's decision was based on Plaintiff's RFC, state agency findings, and the Medical-Vocational Guidelines. (Tr. 17-18, 381-88). The ALJ additionally considered the postural and environmental limitations on Plaintiff's RFC, and concluded, based on SSR 85-15, that "the additional limitations have little or no effect on the

occupational base of unskilled light work." SSR 85-15, Capability to Do Other Work- the Medical Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857; (Tr. 18). Plaintiff fails to point to evidence that contradicts these findings, so substantial evidence therefore supports the ALJ's determination that there are jobs in significant numbers in the national economy that Plaintiff can perform.

### D. Plaintiff's Credibility

As noted above, the ALJ evaluated Plaintiff's credibility under the Fourth Circuit's Craig test, and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's] residual functional capacity assessment." Craig v. Chater, 76 F.3d 585, 594-595 (4th Cir. 1996); (Tr. 16).

In his fourth assignment of error, Plaintiff argues that the ALJ erred as a matter of law in evaluating Mr. Hedrick's subjective complaints, in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529, and in making a conclusory credibility finding in violation of SSR 96-7p. (Document No. 15-1 at 13). Plaintiff also argues that the ALJ's credibility finding is not supported by substantial evidence, and the ALJ failed to consider the entire case record in determining the Plaintiff's credibility. (Document No. 15-1 at 14-16). Specifically, Plaintiff claims that the ALJ did not provide adequate reasons for rejecting statements made by Plaintiff and findings made by Dr. Wilson and Dr. Girmay. (Document 15-1 at 15). Finally, Plaintiff argues that the ALJ failed to consider his longitudinal medical records in the credibility assessment. (Document No. 15-1 at 15). Plaintiff claims that the fact he underwent two sleep studies, trial use of CPAP and BIPAP,

and a septoplasty since his diagnosis of obstructive sleep apnea in 2003 are illustrative of his persistent efforts to obtain relief from his condition and therefore enhance his credibility. (Document No. 15-1 at 15-16). To support his claim, Plaintiff cites SSR 96-7p, which states that a claimant's persistent efforts to obtain relief from his condition serve to enhance his credibility. SSR 96-7P (S.S.A.), 1996 WL 374186; (Document No. 15-1 at 15).

Defendant argues in response that the ALJ properly assessed Plaintiff's credibility under the Fourth Circuit's Craig test and correctly observed that "Plaintiff's complaints of extreme fatigue and inability to stay awake were not entirely credible where he failed to pursue or follow-up with treatment." (Document No. 17 at 6; Tr. 17). According to Defendant, Plaintiff's credibility is undermined because the ALJ accurately noted that Plaintiff "did not always follow treatment for his sleep apnea, had success with treatment, and reported no problems with memory as a result of his fatigue to his doctors, despite his allegations in the course of applying for disability." (Document No. 17 at 7; Tr. 17, 268, 274, 402, 410). Defendant also argues that the ALJ correctly considered Plaintiff's longitudinal record, "specifically accounted for Dr. Girmay's findings[ ] and Plaintiff's allegations of daytime fatigue," and "recounted Dr, Wilson's treatment notes." (Document No. 17 at 7). Finally, Defendant claims that "Plaintiff demonstrates nothing in the record that reflects evidence not considered by the ALJ that would affect his RFC."

The undersigned agrees with Defendant's argument that the ALJ considered all relevant parts of the case record required to make a credibility determination under SSR 96-7p and 20 C.F.R. § 404.1529. Relevant parts of SSR 96-7p provide that:

> [i]n determining the credibility of the individual's statements, the adjucator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons

15

>   about the symptoms and how they affect the individual, and any other relevant
>   evidence in the case record.

SSR 96-7p (S.S.A.), 1996 WL 374186. The relevant portions of § 404.1529 provide: "[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you." 20 C.F.R. § 404.1529. As noted above, this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The undersigned finds that substantial evidence supports the ALJ's credibility determination. In his decision, the ALJ analyzed the findings of Dr. Girmay and Dr. Wilson, and cited their medical reports (Exhibits 12F and 16F, respectively) throughout the decision. (Tr. 14, 16, 17, 374-80, 402-19). As discussed above, the ALJ then conducted a credibility analysis under the Craig test. Craig v. Chater, 76 F.3d 585, 594-595 (4th Cir. 1996). In step one, the ALJ correctly found that there was objective medical evidence of Plaintiff's obesity, sleep apnea, coronary artery disease, episodes of syncope, and diabetes which supports Plaintiff's allegations under step one of the Craig test. (Tr. 13-16). Substantial evidence also supports the ALJ's finding in step two that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. (Tr. 16-17). It was noted in 2008 that Plaintiff had trouble tolerating CPAP treatment for his sleep apnea, (Tr. 251), but against medical recommendations, Plaintiff did not schedule appointments for further CPAP/BIPAP treatment. (Tr. 17). Also, despite positive results with the BIPAP machine at a sleep study in 2009, Dr. Wilson noted in 2010 that the claimant was not using the BIPAP device due to

issues with the mask. (Tr. 17). The undersigned agrees with Defendant's argument that Plaintiff's failure to seek and obtain adequate medical treatment is substantial evidence that supports the ALJ's credibility determination discrediting Plaintiff's allegations of extreme fatigue and inability to stay awake as not "fully supported by the evidence of record," and agrees that "Plaintiff highlights nothing in the record that reflects evidence not considered by the ALJ that would affect his RFC." (Document No. 17 at 8; Tr. 17). Thus, it appears that the ALJ complied with SSR 96-7p and 20 C.F.R. § 404.1529 by considering the "entire case record" and "all of the available evidence," and Plaintiff has not demonstrated any evidence that the ALJ failed to evaluate. SSR 96-7p (S.S.A.), 1996 WL 374186; 20 C.F.R. § 404.1529.

Further, the ALJ used the correct legal standard when evaluating the statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms. In Mickles v. Shalala, the Fourth Circuit held that an ALJ may consider the level and type of treatment sought and obtained in determining what weight to accord allegations of constant disabling pain. 29 F.3d 918, 930 (4th Cir. 1994). The Fourth Circuit stated that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Id. The undersigned agrees with the position of Defendant and the ALJ that Plaintiff had a history of "noncompliance and/or failure to seek follow up treatment" which undermines his credibility and is inconsistent with the degree of fatigue he alleges. (Tr. 17). Accordingly, the Court finds that the ALJ's decision was based on substantial evidence and an application of correct legal standards.

In short, substantial evidence and correct legal standards support the weight given by the ALJ to physicians' opinions, the determination of Plaintiff's RFC, the determination that plaintiff can

17

adjust to other work, and the ALJ's credibility evaluation of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. The undersigned thus rejects Plaintiff's assignments of error, and recommends that Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Judgment be granted.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 15) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 16) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the

District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard L. Voorhees.

**IT IS SO RECOMMENDED**.

Signed: September 7, 2012

David C. Keesler
United States Magistrate Judge