# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:11-CV-113-RLV-DCK

| | |
|---|---|
| TIMOTHY WAYNE HEDRICK, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) MEMORANDUM AND ORDER<br>) |
| CAROLYN W. COLVIN,[1]<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER** is before the Court on the parties' cross-motions for summary judgment. (Docs. 15, 16.).

Pursuant to 29 U.S.C. § 636(b)(1)(B) and the standing order of designation, the Court referred the aforesaid motions to the United States Magistrate Judge David C. Keesler for recommended disposition. In an opinion filed on September 7, 2012, the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision be affirmed. On September 17, 2012, Plaintiff filed his Objections to the Memorandum and Recommendation (M & R). (Doc. 18). The objections raised by the Plaintiff are deemed timely and are considered herein.

## I.   Introduction

Neither party has objected to the Magistrate Judge's statement of the factual and procedural history of this case; thus, the Court adopts the facts as set forth in the M & R. (Doc. 1-2).

---

[1]   Carolyn N. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

The Federal Magistrate Act provides that a district court shall make a *de novo* determination of those portions of a magistrate judge's report or specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1) (2009); *Camby v. Davis,* 718 F.2d 198, 199–200 (4th Cir.1983). The Court's review of the Commissioner's final decision is limited to the following two issues: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *See* 42 U.S.C. § 405(g) (2010); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). So long as a reasonable mind might accept as adequate the evidence in support of the Commissioner's decision, the Court should not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456; *Smith v. Heckler,* 782 F.2d 1176, 1179 (4th Cir.1986) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

## III. Discussion

The question before the Administrative Law Judge (ALJ) was whether the Plaintiff, a 37-year-old male, was "disabled" as that term of art is defined for Social Security purposes, at any time between May 20, 2008, and the date of his decision.[2] (Doc. 13-2 at 12). Applying the Social Security Administration's five-step, sequential evaluation process,[3] the ALJ determined at steps

---

[2] Under the Social Security Act, 42 U.S.C. § 301, *et. seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423 (d)(1)(A)).

[3] The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. Federal Old-Age, Survivors and Disability Insurance, 20 C.F.R. § 404.1520(a) (2012). The five steps are as follow: (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled; (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments, that meet the duration requirement in § 404.1509—if no, not disabled; (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement—is yes, disabled; (4) whether claimant has the residual functional capacity (RFC) to perform her/his past relevant work—if yes, not disabled; and (5) whether considering claimant's RFC, age,

one and two that Plaintiff had not engaged in any substantial gainful activity since May 20, 2008 and did suffer from a number of severe impairments—namely morbid obesity, obstructive sleep apnea, history of syncope[4] of unknown etiology, and coronary impairments. Federal Old-Age, Survivors and Disability Insurance, 20 C.F.R. § 404.1520(a) (2012); (Doc. 13-2 at 14). The ALJ further determined, however, that Plaintiff's impairments did not meet or equal the requirements of any listing in 20 C.F.R. pt. 404, subpt. P, app. 1, as outlined in step three; that Plaintiff had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), but with certain limitations to the extent that Plaintiff could not participate in the climbing of scaffolding, ropes or ladders; the occasional balancing and climbing of ramps or stairs; or frequent stooping, kneeling, crouching, and crawling. (Doc. 13-2 at 14). Moreover, it was found that he should avoid concentrated exposure to workplace hazards such as dangerous machinery and heights. As such, the ALJ found that Plaintiff could not perform his past relevant work as a frame builder, carving machine operator, and assistant supervisor. *Id*.

Finally, at step five, the ALJ determined—considering his RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines—that the Plaintiff maintained the capacity to make an adjustment to other work. (Doc. 13-2 at 19); 20 C.F.R. pt. 404, subpt. P, app. 2. In so finding, and pursuant to the guidelines established in 20 C.F.R. § 404.1520(a), the ALJ determined the Plaintiff was "not disabled." (Doc. 13-2 at 20). Furthermore, because his ability to perform light work was subject to only certain limitations, the Plaintiff was able to perform other jobs that exist in the national economy, and thus was not under a "disability" as

---

education, and work experience he/she can make an adjustment to other work—if yes, disabled. 20 C.F.R. § 404.1520(a).

[4] "A medical term for passing out is 'syncope' or a 'syncopal episode.' In about half the cases, the cause (etiology) of passing out is never found, even after extensive testing." DAN J. TENNENHOUSE, ATTORNEYS MEDICAL DESKBOOK § 24:22 (4th ed. 2012).

defined by the Social Security Act, at any time between May 20, 2008, and the date of his decision, August 17, 2008. *Id.*

On objection to the M & R, Plaintiff contends that: (1) the Magistrate Judge, in the course of reviewing the ALJ's decision, failed to apply the correct legal standard in explaining the ALJ's weight given to the opinion of an examining state agent physician as required by 20 C.F.R. § 404.1527(f)(2) and SSR 96-6p; and (2) both the Commissioner and the Magistrate Judge failed to apply the correct legal standard in establishing that Plaintiff could perform other jobs that exist in the national economy as required by existing Fourth Circuit precedent. (Doc. 19 at 1, 3); 20 C.F.R. § 404.1527(f)(2); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996) [hereinafter SSR 96-6p]. In so contending, the Plaintiff has asked the Court to reconsider these exceptions *de novo* and reverse and remand the case for payment of benefits, or, in the alternative, modify the recommended decision and remand with instructions to properly evaluate certain evidentiary submissions and issue a new decision based on substantial evidence and proper legal standards. (Doc. 19 at 7).

### A. Objection 1: Failure to Explain the Weight of Dr. Girmay's Opinion

Regarding the first objection raised by the Plaintiff—that the ALJ "assigned great weight to the opinions of non-examining consultants . . . , [h]owever, the ALJ failed to make a finding as to what weight, if any, that he gave to the findings and opinion of Dr. Girmay"—Plaintiff alleges that the ALJ did not apply the proper legal standard, and that in reviewing it, neither did the Magistrate Judge. (Doc. 19 at 2). Thus formulated, the objection goes to the legal standard employed and is properly reviewable by this Court. *Hays*, 907 F.2d at 1456.

Specifically, Plaintiff argues the ALJ did not apply the legal standards of review as set forth by both 20 C.F.R. § 404.1527(f)(2), now codified at § 404.1527(e)(2), and the Social Security

Ruling 96-6p.1. (Doc. 19 at 2); 20 C.F.R. § 404.1527(e)(2); SSR 96-6p.1. He alleges that both statutes require a more than cursory mention of a State consultative medical report in the administrative record such as that filed by Dr. Girmay (Girmay). 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he [ALJ] must explain in the decision the weight given to opinions of a State agency . . . consultant."); SSR 96-6p at *1 ("[ALJs] . . . may not ignore these opinions and must explain the weight given to these opinions in their decisions."). Girmay is a State agency physician who performed a consultative examination of the Plaintiff. (Doc. 13-2, Ex. 12F). His findings included decreased breath sounds and difficulty breathing. He also opined that Plaintiff's limitation was severe. *Id.*

The Plaintiff's interpretation of these two legal standards, however, is misguided. He asserts that SS policy "mandat[es] . . . an explanation in the decision" of the "weight given to [an] opinion in their decisions," apparently inferring that each medical decision must be mentioned by name and must be directly alluded to with regard to the amount of weight the ALJ gives to each in his decision. *Id.* The regulations and policy interpretations simply do not go so far. Instead, SSR 96-6p states, in relevant part, that "the opinion of a State agency . . . consultant . . . may be entitled to greater weight than [another] opinion if the . . . opinion is based on a review of a . . . record . . . [that] provides more . . . comprehensive information." *Id.* at *3. It also provides that ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Id.* at *1.

In the instant case, the ALJ did not ignore Girmay's opinion. In fact, the ALJ incorporated Girmay's findings into his decision in no less than three specific instances, each time explicitly or implicitly noting that the doctor's findings were invariably treated as "expert opinion evidence" pursuant to SSR 96-6p and not ignored. (Doc. 13-2 at 14–16); SSR 96–6p at *1. The

Plaintiff would have the Court find that allusion to and reliance on Girmay's findings is not enough; that the ALJ must call him out by name and explicitly assign a particularized weight to his opinion. (Doc. 19 at 2) ("[M]ere reference to the [report], without more, does not suffice . . . ."

Courts, however, have not interpreted so rigorous a requirement for each and every medical opinion: "Once the ALJ determine[s] not to accord [an opinion] controlling weight, the ALJ [is] required only to provide good reasons for giving greater weight to the opinions of [other] agency sources." *Helms v. Comm'r of Social Sec. Admin*, 405 Fed. App'x 997, 1002 (6th Cir. 2011). In light of *Helms*, it appears that the level of weight given to one opinion may be negatively implied by the assignment of greater or controlling weight to another opinion, so long as good reason is given for to prefer the latter. Thus, the essential issues are (1) did the ALJ assign greater or controlling weight to another opinion, thus implicitly commenting on the weight given to Girmay's opinion, and (2) was the assignment of such greater or controlling weight based on "good reason." *Id.*

The resolution of both issues is in the affirmative. First, the ALJ "[gave] the greatest weight to the opinion of state agency consultant Dr. Robert Gardner," thereby implicitly assigning less weight to Girmay's opinion. (Doc. 13-2 at 18). The *Helms* court confirms that such an explicit assignment of weight to one opinion may stand in as an implicit assignment of lesser weight to another. *Helms*, 405 Fed. App'x at 1002. Second, and in regards to "good reason," the ALJ assigned such weight "because [Dr. Gardner's] opinion was based on additional evidence." (Doc. 13-2 at 18). Thus, the final remaining issue is whether "additional evidence" is a "good [enough] reason" to assign a greater weight to a different opinion. (Doc. 13-2 at 18); *Helms*, 405 Fed. App'x at 1002. For that, one must only refer to the very SSA policy interpretation on which the

Plaintiff relies: "[An] opinion . . . may be entitled to greater weight . . . if [it] is based on a review of . . . more detailed and comprehensive information." SSR 96-6p at *3. Undoubtedly, "additional evidence" provides "more detailed and comprehensive information," and thus such reasoning on behalf of the ALJ is a "good reason" according to established Social Security policy interpretations. (Doc. 13-2 at 18); SSR 96-6p at *3; *Helms*, 405 Fed. App'x at 1002. In this case, the specific evidence relied on in the Gardner opinion not only explicitly incorporated the Girmay opinion, but also relied on the Plaintiff's entire objective medical record, unlike the Girmay opinion which relied solely on a physical evaluation and a limited cardiology report from 2008. *Compare* (Doc. 13-10, Ex. 12F) ("There is an echocardiogram report from September 25, 2008.") *with* (Doc. 13-10, Ex. 13F) (incorporating the findings of no less than nine treatment records in Plaintiff's comprehensive medical file).

Therefore, this Court finds that the ALJ (1) did not ignore the Girmay opinion, (2) sufficiently "explained the weight given to [Girmay's] opinion" by placing greater or controlling weight on a different opinion, and (3) explained the reason for such weight with a good reason in accordance with the relevant Social Security policy interpretations, regulations, and case law.

**B. Objection 2: Sufficient Availability of Work in the National Economy**

Plaintiff's second objection to the Magistrate Judge's M & R asks for *de novo* review of the ALJ's willingness to rest his decision of sufficient employment opportunities for the Plaintiff on the application of the Medical-Vocational Guidelines (Grids) as set forth in 20 C.F.R. § 404, subpt. P, app. 2, § 200. Specifically, Plaintiff alleges that both the Magistrate Court's Recommendation and the ALJ decision fail to address the absence of expert vocational testimony in support of the ALJ's finding that there are a significant number of jobs available to the

Plaintiff which account for his severe, nonexertional impairment of fatigue and memory loss. (Doc. 19 at 3).

Plaintiff supports his proposition by claiming that expert vocational testimony, and not just a reading of the Grids, is required by the Fourth Circuit when claimant shows a severe nonexertional limitation, citing to both *Grant v. Schweiker* and *Smith v. Schweiker*. (Doc. 19 at 4–5); *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983) (requiring the [Commissioner] of SS to provide vocational testimony of available jobs in the event claimant suffers from nonexertional limitations); *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984) (precluding reliance on the Grids to determine a claimant's disability when a nonexertional condition affects an individual's RFC to perform work which he/she would otherwise be exertionally capable of performing). Plaintiff also cites to a more recent district court decision, *Smith ex. rel. Smith v. Astrue,* in support of the proposition that Plaintiff's sleep apnea is a severely limiting nonexertional impairment. *Smith ex. rel. Smith v. Astrue*, 2008 WL 2225846 (W.D. Va. May 27, 2008) [hereinafter *Smith ex. rel.*] (finding that inconclusive vocational testimony does not constitute substantial evidence that there are jobs in significant numbers in the national economy that account for claimant's sleep apnea and resulting fatigue).

In all three instances, however, the Plaintiff overlooks key distinguishing facts—facts which make all the difference. First, *Smith* effectively distinguishes *Grant*, and thus *is* worth noting, but not for the reasons Plaintiff sets forth. *Smith*, 719 F.2d at 725 (interpreting *Grant*, 699 F.2d 189). The *Smith* court reads *Grant* as follows:

> "The proper inquiry, under *Grant*, is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable. If the condition has that effect, it is properly viewed as a nonexertional impairment, thereby precluding reliance on the [G]rids to determine claimant's disability."

*Id.* (internal quotations omitted). Therefore, reliance on the Grids is *precluded only if* the nonexertional condition in question is credibly found to affect the individual's RFC to perform work of which he is otherwise exertionally capable. In the instant case, however, Plaintiff overlooks the fact that the ALJ found the evidence that the Plainitff's sleep apnea and fatigue legitimately affected his RFC to be diaphanous, and thus not sufficiently credible to support such a proposition. (Doc. 13-2 at 18) ("[C]laimant's allegations of extreme fatigue and an inability to stay awake are not fully supported by the evidence of record.") This finding was based on substantial evidence in the record that the Plaintiff's sleep apnea is treatable, and the Magistrate agreed. (Doc. 18 at 11) ("Plaintiff's history of noncompliance with treatment casts doubt on his credibility, and the ALJ based his misgivings about Plaintiff's allegations of extreme fatigue and an inability to stay awake upon this evidence."). Setting aside the fact that the Plaintiff has raised no objection to either the ALJ's finding of incredibility or the Magistrate Judge's review of such finding, this Court finds the ALJ's conclusion to be supported by the evidence.

The regulations are explicit in their recommendation that "[n]ot all individuals with sleep apnea develop a functional impairment that affects work activity." 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings) § 3.00(H). The Fourth Circuit recently held, in a case with strikingly similar facts, that when sleep apnea can be successfully treated, it cannot be used as evidence of a disability or as affecting the claimant's RFC. *Myers v. Comm'r of SSA*, 456 Fed. App'x 230, 231 (4th Cir. 2011) ("Substantial evidence supports the ALJ's conclusion that [claimant] failed to establish a basis for his complaints of periods of sleep during the day . . . [because he] fail[ed] to use the BiPAP machine correctly.") Like in *Myers*, here the Plaintiff "was not using his CPAP/BIPAP device." (Doc. 13-2 at 18) (referencing Exhibit 4F to Document 13-2). *Myers*, in turn, relies on *Owen v. Astrue* for the proposition that "a claimant's noncompliance can

constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Myers*, 456 Fed. App'x at 232; *Owens v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). In the instant case, it is not a contradictory physician's opinion, but instead testimony from the Plaintiff, which is inconsistent with the controlling RFC opinion as determined by the ALJ. (Doc. 13-2 at 18) ("[T]he claimant's statements concerning the intensity, persistence and *limiting effects* of these symptoms are *not credible* to the extent they are inconsistent with the above [RFC] assessment.") (emphasis added). Because the fatigue that the Plaintiff asks the court to consider to be a contributory nonexertional impairment is likely remediable by a course of treatment that the Plaintiff has not followed, the ALJ did not err in disregarding it in considering the proper RFC for application to extant jobs for the Plaintiff.

Therefore, substantial evidence, federal regulations, and case law all support the ALJ in finding that the fatigue alluded to by the Plaintiff did not credibly affect his RFC. As such, Plaintiff's reliance on *Smith* is misguided, because only when a given nonexertional condition affect's an individual's RFC to perform work that he is otherwise exertionally capable of performing does *Smith* preclude reliance on the Grids and require vocational testimony. *Smith*, 719 F.2d at 725. Because no such credible finding of an effect on work activity was made, and because the ALJ reasonably concluded that Plaintiff's claimed impairment was treatable, the Plaintiff's insistence on vocational testimony to consider the impact of fatigue as a nonexertional disabling impairment is groundless. For the foregoing reasons, the ALJ's deference to the Grids is acceptable.

The Plaintiff does not stop there, however. He seemingly cites *Smith ex. rel.* in support of a claim that *all* sleep apnea claims result in fatigue and are therefore entitled to consideration

outside of the Grids. *Smith ex. rel.*, 2008 WL 2225846. The *Smith ex. rel.* court, however, directly addresses this issue: "It is well established that impairments which are remediable by treatment or medications *are not disabling*." *Id.* at *8 (emphasis added). The only reason the ALJ was required to resort to expert vocational testimony in that case was that the claimant had died, and treatment had not proven effective before his death; thus, "it [was] simply unknown whether [treatment] would have ameliorated his impairment." *Id.* In the case at bar, the ALJ found substantial evidence that treatment would ameliorate Plaintiff's impairment, thus the impairment was not to be considered in conjunction with the Grids analysis. Thus, *Smith ex. rel.* is not dispositive and the Court defers to the substantially supported review of the ALJ's decision by the Magistrate Judge.

## IV. Conclusion

Therefore, because this Court finds that the ALJ (1) considered Girmay's evidentiary and consultative opinion, (2) reasonably explained good reason for assigning primary weight to another opinion, and (3) met his burden of establishing that Plaintiff could perform other jobs that exist in the national economy as required by existing Fourth Circuit precedent by adhering only to the Grids, this Court overrules all objections to the Magistrate Judge's Recommendation as raised by the Plaintiff.

After a further careful review of the Magistrate Judge's recommendation beyond those objections, the Court finds the proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation that the Defendant's motion for summary judgment be allowed.

## V. Order

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for summary judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is hereby **GRANTED** and that the Commissioner's decision in this case is **AFFIRMED**. A judgment dismissing this matter on the merits will be entered herewith.

Signed: June 3, 2013

Richard L. Voorhees
United States District Judge